**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 CR 721 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KRIKOR TOPOUZIAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The Information in this case charges the defendant with having willfully violated the Defense Production Act ("DPA") of 1950, 50 U.S.C. §§ 4512 and 4513, based on his allegedly intentional accumulation of approximately 79,160 N-95 respirator masks, with the intent to resell the masks at prices in "excess of prevailing market prices." [Dkt. #2]. These types of masks were designated by the President under the Act as "scarce materials" due to the ongoing pandemic.[1] The Information charges that the defendant intentionally sold thousands of respirator masks at markups of up to 367% per mask, in violation of the DPA's prohibition of sales of certain specified products in excess of "prevailing market prices," despite having received warnings from law enforcement, and that he

---

[1] Section 4512 provides, in relevant part:

In order to prevent hoarding, no person shall accumulate (1) in excess of the reasonable demands of business, personal, or home consumption, or (2) for the purpose of resale at prices *in excess of prevailing market prices*, materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation. The President shall order published in the Federal Register, and in such other manner as he may deem appropriate, every designation of materials the accumulation of which is unlawful and any withdrawal of such designation. (Emphasis supplied).

allegedly continued to engage in prohibited profiteering, selling "scarce masks" at "highly-excessive prices," with markups of up to 367% per mask. [Dkt. #2 at 5].

Relying on the "void-for-vagueness" doctrine, *see Johnson v. United States*, 576 U.S. 591, 215 (2015); *Skilling v. United States*, 561 U.S. 358 (2010), and *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), it is the defendant's contention that by prohibiting resale of N95 masks "at prices in excess of *prevailing market prices*," (emphasis supplied), the DPA failed to provide "an ascertainable standard of criminal liability," or "indicate what markups were permissible," and thus "fail[ed] to give ordinary people fair notice of the conduct it punishes, and [is] so standardless that it invites arbitrary enforcement." [Dkt. #17 at 2]. But, as discussed below, the vagueness doctrine does not admit of easy or automatic application. It requires only a reasonable degree of certainty in statutory language, *United States v. Article of Drug*, 484 F.2d 748, 750 (7th Cir. 1973), and does not demand "[p]erfect clarity and precise guidance" "even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008). It must not be overlooked that:

> "The...threshold for declaring a law void for vagueness is high. 'The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.'... Rather it is sufficient if a statute sets out an 'ascertainable standard.'... A statute is thus void for vagueness only if it wholly 'fails to provide a person of ordinary intelligence  fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"

*Johnson v. United States*, 576 U.S. 591, 629 (2015).[2]

_____

[2] For a discussion of the doctrine generally*, see Minnesota Voters Alliance v. Mansky,* _U.S._, 138 S. Ct. 1876, 1891 (2018); *Sessions v. Dimaya*,_U.S._, 138 S.Ct. 1204, 1212 (2018); *Beckles, supra,* 137 S.Ct. at 892; *Johnson v. United States*, 576 U.S. 591, 607 (2015)(Kennedy, J., *concurring*); *United States v. National Dairy Products*, 372 U.S. 29 (1963)(statutes are not "automatically invalidated as vague simply because difficultly is found in determining whether certain marginal offenses fall within their language.");

(continued...)

The general practice outside of the First Amendment context has been to consider the claimed vagueness of a statute in light of the facts of the particular case – *i.e.* as applied – rather than in the abstract. *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Cook,* 970 F.3d at 873. Under that approach, a party challenging the statute ordinarily must show that it is vague as applied to him, and if therefore the statute applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios. *Id.*

It is the government's position that the statutory prohibition against accumulating items designated by the President as "scarce" during a national emergency for the purpose of reselling those items in excess of "prevailing market prices" is not unconstitutionally vague, and that the statute contains a "willfulness" requirement, which numerous cases have held critical to analysis when a statute is challenged under the "void-for-vagueness" doctrine. *See Village of Hoffman Estates v. Brookside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *Colautti v. Franklin*, 439 U.S. 379, 395 (1979)(collecting cases); *Planned Parenthood of Indiana & Kentucky v. Marion County Prosecutor*, 7 F.4th 594 (7ᵗʰ Cir. 2021). The government contends that its anticipated proof at trial will show the defendant was aware that the prices at which he was selling the accumulated N-95 masks were substantially above "prevailing market prices," and that his conduct was knowing and willful.

---

[2](...continued)
*Planned Parenthood of Indiana & Kentucky, Inc. v. Marion County Prosecutor*, 7 F.4th 594 (7ᵗʰ Cir. 2021); *United States v. Cook*, 970 F.3d 866 (7ᵗʰ Cir. 2020); *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012); *and Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 519 (7th Cir. 2010). Only a reasonable degree of certainty in statutory language is required. That is, there must be "sufficient definiteness that ordinary people can understand what conduct is prohibited...." *Gonzales v. Carhart,* 550 U.S. 124, 148-49 (2007).

It is significant to note that the statute under which the defendant is charged, the Defense Production Act, is not new. Quite the contrary. It is 70 years old, having first appeared in 1950 at the start of the Korean War as § 2072 of the Defense Production Act. 50 U.S.C. § 2072. The language of § 2072 has remained unchanged and was modeled after the Second War Powers Act of 1942. *Exxon Mobil Corp. v. United States*, 108 F.Supp.3d 486, 497 (S.D.Tex. 2015).[3]

## I.

### FACTUAL BACKGROUND

The Information charges that beginning in about December 2019, a previously unknown virus, SARS-CoV-2, commonly referred to as COVID-19, spread around the world causing widespread death. Indeed, more Americans have died of the coronavirus disease than perished in all of WWII. On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a National Public Health Emergency. 42 U.S.C. § 247d. On March 13, 2020, the President issued Executive Order 13909, 85 Fed. Reg. 16,277, invoking the powers vested in the President by the Defense Production Act, which authorize the President to, among other things, "allocate

---

[3] One of the most well known law review Articles ever written on this (or any other topic) is Anthony G. Amsterdam's, *Void-for-Vagueness Doctrine In the Supreme Court*, 109 U. Pa. L. Rev. 67 (1960). Although written as a student note, the piece was, from the beginning, cited with the author's name – a then unheard of form of recognition. *See e.g.*, *N.A.A.C.P. v. Button*, 371 U.S. 415, 433 n.14 (1963). It begins with these now famous words: "There are places in the law through which a pair of mutually oblivious doctrines run in infinitely parallel contrariety, like a pair of pool hall scoring racks on one or the other of which, seemingly at random, cases get hung up. Such is the area of those Supreme Court decisions which purport to turn on the issue of 'unconstitutional uncertainty'...."

For more recent discussions of the vagueness doctrine, *see* Christina D. Lockwood, *Defining Indefiniteness: Suggested Revisions to the Void for Vagueness Doctrine*, 8 Cardozo Pub.L.Policy and Ethics Journal, 255 (2010) and Andrew Goldsmith, *The Void-For-Vagueness-Doctrine in the Supreme Court, Revisited*, 30 Am.J.Crim.L. 279 (2003). *See also* Judge St. Eve's characteristically comprehensive Opinion in *Planned Parenthood of Indiana & Kentucky, Inc. v. Marion County Prosecutor*, 7 F.4th 594 (7th Cir. 2021).

materials, services, and facilities in such manner, upon such conditions, and to such extent as he shall deem necessary or appropriate to promote the national defense." 50 U.S.C. § 4511(a)(2).

Under the Act, the President may exercise this authority "to control the general distribution of any material in the civilian market" if the President finds "(1) that such material is a scarce and critical material essential to the national defense, and (2) that the requirements of the national defense for such material cannot otherwise be met without creating a significant dislocation of the normal distribution of such material in the civilian market to such a degree as to create appreciable hardship." 50 U.S.C. § 4511(b). The Act requires the President to publish "every designation of materials the accumulation of which is unlawful," and it authorizes the President to "prescribe such conditions with respect to the accumulation of materials in excess of the reasonable demands of business, personal, or home consumption as he deems necessary to carry out the objectives of this chapter." 50 U.S.C. § 4511(b).

On March 23, 2020, the President issued Executive Order 13910, delegating to the Health and Human Services Secretary the President's authority under 50 U.S.C. § 4512 to prevent the excess accumulation of certain "health and medical resources necessary to respond to the spread of COVID-19 within the United States." 85 Fed. Reg. 17,001. Two days later, pursuant to 50 U.S.C. § 4512 and Executive Order 13910, the HHS Secretary, by public notice, see 85 Fed. Reg. 17592, designated 15 categories of health and medical resources under the Act as "scarce materials," the supply of which would be threatened by accumulation in excess of reasonable demands of business, personal, or home consumption, or for the purpose of resale at prices in excess of prevailing market prices. These resources included: (I) N-95 Filtering Facepiece Respirators;

5

(ii) Other Filtering Facepiece Respirators; (iii) PPE face masks; and (iv) PPE surgical masks.[4]

Section 4512 of the Defense Production Act prohibits a person from accumulating one of the items designated as scarce for the purpose of resale at prices in "excess of prevailing market prices." 50 U.S.C. § 4512. Section 4513 makes it a misdemeanor to "willfully perform[ ] any act prohibited" by the DPA. 50 U.S.C. § 4513.

In addition to the President's Executive Order 13910, the Attorney General issued a Memorandum that, under the Order, the Secretary of HHS could protect scarce healthcare and medical items by designating particular items as protected and once designated, the Defense Production Act "makes it a crime for any person to accumulate that item...for the purpose of selling it in excess of prevailing market prices." Joseph Nguyen Ho, *Price Gouging & Health Justice: Passing Anti-Price Gouging Laws Amid A Pandemic*, 30 Annals Health L. Advance Directive 213, 217 (2020).

As discussed earlier, the Information charges that between March 6 and April 7, 2020, including the period after they were designated as "scarce materials," the defendant accumulated approximately 79,160 N-95 masks at prices ranging from approximately $4.27 to $7 per mask, with a mean price of approximately $5.08. However, prior to the pandemic, defendant's company did not sell N-95 or similar types of masks. Between March 29 and April 22, 2020, the defendant is charged with having sold approximately 11,492 of the masks to customers at a markup of approximately 185% to 367% per mask – in some cases the masks were sold for $19.95 for a single mask. [Dkt. #2]. These prices, the information charges, were "in excess of the prevailing

---

[4] No claim is made that the HHS Secretary's designation of N-95 masks as a scarce material was ambiguous or unclear.

market prices."

The Motion to Dismiss [Dkt. #17] contends that since the DPA does *not* define the phrase, "prevailing market prices," – or specify a particular price – it "fails to establish a minimal standard" of conduct and is therefore unconstitutionally vague under the Void For Vagueness Doctrine. [Dkt. 17 at 7].

## II.

## THE VOID–FOR-VAGUENESS DOCTRINE

Although repeatedly stressed as significant by the Supreme Court, the defendant's argument overlooks the significant fact that Acts of Congress, including criminal statutes, have "strong presumptive validity." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). *Accord Johnson v. United States,* 576 US at 629; *United States v. Morrison*, 529 U.S. 598, 607 (2000). And the passage of time – here, 70 years – simply reinforces that presumption. *Woodring v. Jackson County, Indiana*, 986 F.3d 979, 991 (7th Cir. 2021); *In re Search of Office of Tylman*, 245 F.3d 978, 981 (7th Cir. 2001); *In re Air Crash Disaster Near Roselawn, Indiana*, 96 F.3d 932, 944 (7th Cir. 1996). Also overlooked is the principle that a penal statute need only define the offense prohibited "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). *See also Johnson v. United States*, 576 U.S. 591, 597 (2015); *United States v. Cook*, 970 F.3d 866 (7th Cir. 2020); *United States v. Bonin*, 932 F.3d 523 (7th Cir. 2019); *United States v. Sylla*, 790 F.3d 772, 774 (7th Cir. 2015).[5] Mathematical and

---

[5] The void-for-vagueness cases became much more common soon after the Court began relaxing its approach to legislative delegations. Before 1940, the Court decided only a handful of vagueness challenges (continued...)

pedantic precision are not required. *United States v. Williams*, 553 U.S. 285, 304 (2008). The "void for vagueness" doctrine is only operative if the challenged statute is "so vague that it fails to give *ordinary people fair notice* of the conduct it punishes, or *so standardless* that it invites arbitrary enforcement." *Johnson, supra.* 576 U.S. at 597 (emphasis supplied).

However, since "[p]erfection may not be demanded of law," Frankfurter, The Case of Sacco and Vanzetti, 108 (Little, Round & Co. 1961), "perfect clarity and precise guidance have never been required." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). The void-for-vagueness doctrine does not pretend to be an exception to this principle. Quite the contrary. *See Harris v. Arizona Independent Redistricting Commission*, _U.S._, 136 S.Ct. 1301 (2016); *Kansas v. Colorado*, 543 U.S. 86, 102 (2004); *United States v. Terry*, 572 F.3d 430, 435 (7th Cir. 2009).

Unless First Amendment interests are threatened – and there is no claim here they are – vagueness challenges are often analyzed as "as-applied challenges." This is how the Seventh Circuit in *Cook*, 970 F.3d at 873 put it: "The general practice, outside of the First Amendment context, has been to consider the purported vagueness of a statute in light of the facts of the particular case—i.e., as applied—rather than in the abstract." *See also Holder*, 561 U.S. at 20 (a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others"); *United States v. Plummer*, 581 F.3d 484, 488 (7th Cir. 2009). Notably, "[i]n determining the sufficiency of the notice a statute must of necessity be examined in light of the conduct with which the defendant is charged." *National Dairy Products*, 372 U.S. at 33. *See also Cook*, 970 F.3d at 873 ("a litigant challenging [a] statute must ordinarily show that it is vague

---

[5](...continued)
to federal statutes. Since then, the phrase, "void-for-vagueness," has appeared in Supreme Court cases over 100 times. *Gundy v. United States*, _U.S._, 139 S.Ct. 2116, 2142 (2019).

as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statue is vague as to one or more hypothetical scenarios."). Those generalities aside, we shall examine the facial argument advanced by the defendant, as the Seventh Circuit has recognized we may. *Cook, supra*, 970 F.3d at 873.

### III.

### Section 4512 Provides Constitutionally Sufficient Notice of the Conduct It Prohibits And Thus Is Sufficient Under The "Void-Vagueness-Doctrine"

The defendant's insistence that the lack of a specific or numerical specification of what exactly constitutes "prices in excess of prevailing market prices" requires a finding of constitutional vagueness is mistaken. Indeed, the argument ignores more than a century of unbroken usage of that phrase in every imaginable legal context. As noted earlier, while the phrase "prevailing market price" appeared 70 years ago in the Defense Production Act of 1950, that was by no means its debut. Quite the contrary. The phrase had been used *repeatedly* for more than a century by both courts and scholars, and both before and after the Act. It must not be forgotten that "[t]he requirement of reasonable certainty does not preclude the use or ordinary terms to express ideas which find adequate interpretation in common usage." *United States v. 2600 State Drugs, Inc.*, 235 F.2d 913, 916 (7th Cir. 1956).

A Westlaw search of the phrase, "prevailing market price," reveals that it has been used in 1,107 federal cases going back to 1894, with the most recent case being from the Eastern District of Missouri in 2021. *See Hennessey v. Kohl's Corp.*, 2021 WL 5415031 (E.D.Mo. 2021). A Westlaw search also reveals that the phrase has been used in 14 Supreme Court cases going back to 1926. In fact, Justice Brandeis's unanimous Opinion in *United States v. Wyckoff Pipe & Creosoting Co*, 271

9

U.S. 263, 266 (1926), used the phrase twice without a hint of disapproval.[6] *See also Clinton v. New York*, 524 U.S. 417, (1998); *Cities Service Gas Co. v. Peerless Oil & Gas Co.*, 340 U.S. 179, 183 (1950).

In addition, the phrase has been used in 19 cases by the Seventh Circuit, the first being in 1922, *Grossman v. United States*, 282 F. 790, 792 (7th Cir. 1922); *see also Sevugan v. Direct Energy Services, LLC*, 931 F.3d 610 (7th Cir. 2019)(where the court concluded that ascertaining the "prevailing market price" simply required a valid comparator against which to measure); *United States v. Sklena*, 692 F.3d 725 (7th Cir. 2012),[7] as well as in 49 cases by courts in the Northern District of Illinois, with the first being in 1894. *Gottschalk Co. v. Distilling & Cattle-Feeding Co.*, 62 F. 901, 902 (C.C.D. Ill. 1894), *aff'd* 6 F. 609 (7th Cir. 1895).

A further Westlaw inquiry discloses that the phrase has been used in 635 state cases, the most recent being *Shirlaine West Properties Ltd v. Jamestown Resources, LLC*, 2021 WL 5367849, at *1 (Tex. App. 2021), the earliest being in 1874 in *Otter & Co. v. Greenwald*, 1874 WL 12063 (Ct. of Appeals Ky. 1874). The phrase, "prevailing market price," according to Westlaw, appears in 963 law reviews and journals, dating back to the 1910 edition of the Yale Law Journal. *See Sales-Breach of Contract-Measure of Damages-Hardwood Lumber Co. v. Adam and Steinbrugge. 68 S. E. (Ga.)*, 725, 20 Yale L.J. 158, 159 (1910). A further Westlaw search under "text and treatises" reveals that the phrase, "prevailing market price," appears in 524 separate entries. In short, the phrase "prevailing market price," has been used by courts and scholars in this country for over a century. The phrase

---

[6] In *Cities Service Gas Co. v. Peerless Oil & Gas Co.*, 340 U.S. 179, 183 (1950), the plaintiff argued that a particular state statute did not permit general price fixing "at a figure in excess of the prevailing market price...."

[7] *See also Sevugan v. Direct Energy Service, LLC*, 931 F.3d 610 (7th Cir. 2019).

appears over 2,351 times under the heading "administrative decisions and guidance" and appears in

4,076 "secondary sources." Finally, the phrase, "prevailing market price," appears in at least 15

federal statutes — other than 50 U.S.C. § 4512 — in the United States Code. They are listed in the

note below.[8]

---

[8] 42 U.S.C. § 8816(b) (2018) ("The sales price specified in a purchase agreement under this section may not exceed the estimated prevailing market price as of the date of delivery, as determined by the Secretary of Energy, unless the Secretary concerned determines that such sales price must exceed the estimated prevailing market price in order to ensure the production of biomass energy to achieve the purposes of this chapter."); 42 U.S.C. § 8816(d) (2018) ("Any Federal agency receiving such energy shall be charged (in accordance with otherwise applicable law), from sums appropriated to such Federal agency, for the prevailing market price as of the date of delivery, as determined by the Secretary of Energy, for the product which the biomass energy is replacing."); 25 U.S.C. § 1545 (2018) ("All acceptances of cash settlements by the Commissioner of Indian Affairs for livestock lent by the United States to any individual Indian, or to any tribe, association, corporation, or other group of Indians, and all sales and relending of livestock repaid in kind to the United States on account of such loans are authorized and ratified: *Provided*, That on and after May 24, 1950, the value of such livestock for the purposes of any such cash settlement shall be based on prevailing market prices in the area and shall be ascertained by a committee composed of three members, one of whom shall be selected by the superintendent of the particular agency, one of whom shall be selected by the chairman of the tribal council, and one of whom shall be selected by the other two members."); 43 U.S.C. § 1314(b) (2018) ("In time of war or when necessary for national defense, and the Congress or the President shall so prescribe, the United States shall have the right of first refusal to purchase at the prevailing market price, all or any portion of the said natural resources, or to acquire and use any portion of said lands by proceeding in accordance with due process of law and paying just compensation therefor."); 22 U.S.C. § 286nn(1)(A) (2018) ("sells a quantity of its gold at prevailing market prices to a member or members in nonpublic transactions sufficient to generate 2.226 billion Special Drawing Rights in profits on such sales;"); 40 U.S.C §574(d) (2018) ("The property is valued at the prevailing market price when the cash payment becomes due."); 25 U.S.C. § 3505(c)(4)(A) (2018) ("pay more than the prevailing market price for an energy product; or"); 50 U.S.C. § 4533(b) (2018) ("Subject to the limitations in subsection (a), purchases and commitments to purchase and sales under subsection (a) may be made without regard to the limitations of existing law (other than section 1341 of Title 31), for such quantities, and on such terms and conditions, including advance payments, and for such periods, but not extending beyond a date that is not more than 10 years from the date on which such purchase, purchase commitment, or sale was initially made, as the President deems necessary, except that purchases or commitments to purchase involving higher than established ceiling prices (or if no such established ceiling prices exist, currently prevailing market prices) or anticipated loss on resale shall not be made, unless it is determined that supply of the materials could not be effectively increased at lower prices or on terms more favorable to the Government, or that such purchases are necessary to assure the availability to the United States of overseas supplies."); 29 U.S.C. § 186(c)(3) (2018) ("with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business;"); 42 U.S.C. § 12805 note (2018) ("the dwellings constructed in connection with assistance provided under this section are quality dwellings that comply with local building and safety codes and standards and are available at prices below the prevailing

(continued...)

This conspicuous line of continuous judicial and professional usage spanning more than a century stands in stark contrast to the defense argument that the term, "prevailing market prices," in the Defense Production Act is void-for-vagueness, proving once again the wisdom of Justice Holmes' insight that "a page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921).

Finally, it is axiomatic that the law does not demand the impossible or require the ineffectual and pointless. *Cf. Brooklyn Life Insurance Co. v. Dutcher*, 95 U.S. 269, 272 (1877). Thus, the requirement of the Defense Production Act that the price at which certain goods are sold not exceed "prevailing market prices" makes perfect sense. Prices of a given commodity are not monolithic across the country; they are generally regional, and what is a "prevailing market price" in New York or Chicago will not likely be the equivalent of the "prevailing market price" in Cedar Rapids, Iowa or Boise, Idaho to use but two examples. Or to put it more colloquially, just as one size does not necessarily fit all, neither does one price apply to every community in the country. Any suggestion

---

[8](...continued)

market prices;"); 25 U.S.C. § 3502(d)(2)(A) (2018) ("pay more than the prevailing market price for an energy product or byproduct; or"); 40 U.S.C. § 550(f)(3)(A)(ii) (2018) ("dwellings constructed, rehabilitated, or refurbished through use of the property shall be quality dwellings that comply with local building and safety codes and standards and shall be available at prices below prevailing market prices."); 15 U.S.C. § 78w(b)(4)(I) (2018) ("the steps that have been taken and the progress that has been made in promoting the timely public dissemination and availability for analytical purposes (on a fair, reasonable, and nondiscriminatory basis) of information concerning government securities transactions and quotations, and its recommendations, if any, for legislation to assure timely dissemination of (I) information on transactions in regularly traded government securities sufficient to permit the determination of the prevailing market price for such securities, and (ii) reports of the highest published bids and lowest published offers for government securities (including the size at which persons are willing to trade with respect to such bids and offers)."); 21 U.S.C. § 353 note (2018) ("The bulk resale of below wholesale priced prescription drugs by health care entities, for ultimate sale at retail, helps fuel the diversion market and is an unfair form of competition to wholesalers and retailers that must pay otherwise prevailing market prices."); 19 U.S.C. § 1677(7)(D)(I) (2018) ("The Commission shall not determine that there is no material injury or threat of material injury to United States producers of an agricultural commodity merely because the prevailing market price is at or above the minimum support price.").

that the Defense Production Act must specify a specific numerical price applicable everywhere at a given time to avoid the vagueness doctrine is unpersuasive and contrary to economic reality. And, "realities", it should be remembered "must dominate the judgment." *Appalachian Coals, Inc. v. United States*, 288 U.S. 344, 360 (1933).

**IV.**

The Taft-Hartley Act is a conspicuous example of federal legislation that uses the phrase "prevailing market price." Taft-Hartley prohibits payments between union officials and employers. However, the Act contains an exception for "the sale or purchase of an article or commodity at the *prevailing market price* in the regular course of business." 29 U.S.C. § 186(c)(emphasis added). With perhaps one recent exception, it has never been suggested, let alone affirmatively held, that this provision is unconstitutionally vague. Quite the contrary. As previously noted, the term, "prevailing market price," has long appeared in hundreds of judicial and nonjudicial sources, in varying contexts without disapproval. In addition to the discussion earlier, *see, e.g., Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 356 (1982)("the prevailing market price of medical care"); *United States v. Wykoff Pipe & Creosoting Co.*, 271 U.S. at 265–266 (discussing trial court's resort to "prevailing market price" to measure damages); *Bacou Dalloz USA, Inc. v. Continental Polymers, Inc.*, 344 F.3d 22, 28 (1st Cir. 2003)(where the court referred to the "prevailing market price" as the "term specifying market price or the currently available price [and] provides a sufficiently definite basis to provide a remedy" and thus is not "too vague to form an enforceable contract"; this kind of "price term is readily discernible by obtaining quotes from other vendors or other evidence of the prevailing

13

market price");[9] *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 661 (7th Cir. 2002)("a typical price-fixing scheme features 'sellers who collude to set their prices above or below prevailing market prices.'").[10]

The phrase, "prevailing market price," as used in the Defense Production Act, is not dependent upon one's outlook, philosophy or circumstances. Its application and definition do not depend on gender, sexual orientation, age, political affiliation, religion, race, or any other factor relating to social or personal philosophy. It is readily and easily determinable and is not even remotely a concept that requires a person "to divine prophetically" some fact or state or relation that

---

[9] This Opinion further confirms that merely because one is required to ascertain the "prevailing market price" of a given product does not mean that the statute is "void-for-vagueness." Case after case shows that the "void for vagueness" doctrine is not triggered merely because it requires some minimal effort to ascertain a given fact. Indeed, the cases are uniform in rejecting that concept. For example, in *A.B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239-42 (1925), the court, in discussing an earlier case pointed out that real property in New York comes to have a recognized value, "which is relatively stable and *easily ascertained*." (Emphasis supplied). *See also Whatley v. Zatecky*, 833 F.3d 762, 780 (7th Cir. 2016)(court stressed that plaintiff could have discovered RCC status as a youth program with minimal effort). *See also discussion infra* at 15, 16, 17 and 25 and *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010)(requirement of current good manufacturing practices are "not so vague as to be incapable of enforcement."); *United States v. Article of Drug*, 484 F.2d 748 (7th Cir. 1973); *United States v. Bowker*, 372 F.3d 365 (6th Cir 2004); *Stover v Fingerhut Direct Marketing, Inc.*, 709 F.Supp.2d 473 (S.D.W.Va. 2009).

[10] *See also, Grayned v. City of Rockford*, 408 U.S. 104 (1972)(ordinance prohibiting noises that disturbed or tend to disturb the peace or good order of a school session is not unconstitutionally vague since prohibited disturbances "are easily measured by their impact on the normal activities of the school...."); *Edge v. City of Everett*, 929 F.3d 657, 665 (9th Cir. 2019)("...we are not persuaded that the public will be left to guess at the meaning of the term "anal cleft," particularly because the meanings of both "anal" and "cleft" are easily discerned through recourse to a common dictionary..." Likewise, we conclude that the modifier "bottom one-half" does no more than specify an easily ascertained fractional part of an otherwise well-understood area of the body."); *Henderson v. McMurray*, 2020 WL 554230 (N.D. Ala. 2020)(provision that required the amplified sound produced by event not be clearly audible within adjacent or nearby buildings was not void-for-vagueness since it gave a person of ordinary intelligence notice of what type of sound was restricted and such sound could be easily determined by ascertaining whether it was audible in adjacent buildings); *Stover v. Fingerhut Direct Marketing, Inc.*, 709 F.Supp.2d 473 (S.D.W.Va. 2009)(law prohibiting "communication with a consumer" represented by counsel whose name and address are known or could "be easily ascertained" was not void-for-vagueness in light of the fact that the lawyer's name could be ascertained without great difficulty).

14

is dependent on one's status or outlook or philosophy. The "void-for-vagueness" doctrine demands only a "reasonable degree of certainty." "'Perfect clarity and precise guidelines have never been required even of regulations that restrict expressive activity.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Nothing in the Defense Production Act is unconstitutional. In other words, it is not "void-for-vagueness." That being said, it is also appropriate to point out that the Supreme Court has emphasized that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).

The allegations of the Information and the provisions of the Defense Production Act are not remotely comparable to those confronting the Court in *United States v. L. Cohen Grocery Company*, 255 U.S. 81 (1921), which involved a prohibition against selling at an "unreasonable" or "unjust" rate. The Court stressed, in finding the statute unconstitutional under the vagueness doctrine, that the section forbade no specific or definite act. It confined the subject-matter of the investigation which it authorized to no element essentially inhering in the transaction it forbade. The court stressed that the statute "leaves open" the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately "guard against." The Defense Production Act contains none of these flaws. The standard by which an inquiry under the Defense Production Act must proceed are objective and readily calculable. They are not dependent on necessarily subjective and protean characteristics or standards.

The Supreme Court's discussion in *A.B. Small Company v. American Sugar Refining Company*, 267 U.S. 233, 239-42 (1925) is instructive. There, the Court compared *Levy Leasing Co. v. Siegel*, 258 U.S. 242 (1922) with *L. Cohen Grocery Co*, 255 U.S. 81 (1921). The former dealt with

15

a federal statute prohibiting the sale of sugar at unjust, unreasonable and excessive prices, while the latter dealt with reserving unjust, unreasonable and oppressive rent in the leasing of real property for dwelling purposes. The Court made clear that the two acts were quite different when viewed from the perspective of the due process clause. The Court noted that the federal statute contained no provision pointing to what should be deemed a "just, reasonable and not excessive" price. Significantly, stressed the Court, there was no "accepted and fairly stable commercial standard which could be regarded as impliedly taken up and adopted by the statute...." 267 U.S. at 240-41.[11] The Court stressed that while the sugar had a market value, that value was subject to fluctuations that individual manufacturers and dealers could "neither control nor readily foresee."

By contrast, said the Court, the New York statute was not silent as to what should be deemed a just, reasonable, and unoppressive reservation of rent. It recognized objective elements that would require consideration in determining whether a particular rent was reasonable or not. The New York statute was deemed by the Court to be sufficiently definite to satisfy the requirements of due process since the subject matter – real property – particularly in a city, comes to have "a recognized value, which is relatively stable and *easily ascertained*." 267 U.S. at 241 (emphasis supplied).

So too with the concept of "prevailing market price." The fact that an individual may have to expend some slight effort to ascertain what that "prevailing market price" is does not make the statute unconstitutionally vague. In addition to the cases discussed earlier, *see, e.g., United States v. Article of Drug*, 484 F.2d 748 (7th Cir. 1973)(The standard of "current good manufacturing practice" was a reasonably stable and ascertainable standard of manufacturing practice). All that is

---

[11] The concept of "prevailing market price" is, as we have shown, a long accepted and stable commercial standard.

required after all is "a reasonable degree of certainty in statutory language." 484 F.2d at 748, 750. The DPA more than satisfies this requirement.

In *Whatley v. Zatecky*, 833 F.3d 762, 780 (7th Cir. 2016), the court reaffirmed the principle that the Constitution only requires that a statute provide fair notice or objective criteria for determining that which is necessary to be determined. The Seventh Circuit stressed that the plaintiff could have objectively discovered RCC's status as a youth program center with minimal effort involving his observation of whether young people entered and exited the building on a regular basis – an undertaking involving virtually no effort on Whatley's part. Had he undertaken that minimal effort, he would have realized that RCC was providing certain services on a result basis. The court noted that through the extremely slight effort of calling the RCC to determine whether it offered programs to young people on a regular basis he easily could have learned RCC's status as a youth program center. Consequently, the statute was not "void-for-vagueness." 833 F.3d at 780. So too in this case. The standard set by the statute, "prevailing market price," is clear; its necessary ascertainment in any given case is the antithesis of vagueness.

In sum, the cases consistently hold that what is required under the "void-for-vagueness" doctrine is not absolute or mathematical certainty, but rather that persons of ordinary intelligence be provided with a reasonable opportunity to know what is prohibited so that they may act accordingly. *Whatley v. Zatecky*, 833 F.3d 762, 780 (7th Cir. 2016). The Defense Production Act amply satisfies these criteria and statutes regulating business activity have been held to allow less precision in language than those that seek to regulate speech. *Id.*

**V.**

A recent decision by the California Court of Appeals held that the term "prevailing market

17

price" is not unconstitutionally vague. There, the State brought an action under the California Business and Professional Code, alleging that the defendant sold products online by means of misleading, deceptive or untrue statements regarding the formal prices of the products. *People v. Superior Court of California*, 34 Cal.App.5th 376 (2019). The defendant's argument that the statute under which he was charged was "void-for-vagueness" was rejected by the California Court of Appeal, which held that the term "prevailing market price" had a common, ascertainable meaning. *Id.* at 397.  In *Superior Court of California*, the state brought an action against retail stores under California's false advertising laws alleging that JC Penney and others sold products online by means of misleading, deceptive, or untrue statements regarding prices of those products. The specific statutory prohibition involved in the case provided that no price could be advertised unless the alleged former price was the "prevailing market price" within three months preceding the publication of the advertisement. The court found that the term was so common that it is defined in the Oxford English Dictionary, which defines "prevailing" as "[p]redominant in extent or amount" and "most widely occurring or accepted." *Haley v. Macy's, Inc.*, 2017 WL 6539825, at \*6 (N.D. Cal. 2017). *See also* Webster's Third New International Dictionary 1797 (1961)(defining "prevailing" as "what is in general or wide circulation, especially in a given place in time."). In this regard, as we have discussed at length earlier, the phrase "prevailing market price" has been in general usage in the law in this country for more than a century.

In crafting the Defense Production Act, Congress intended the term "prevailing market prices" to mean exactly what the term stated and what it had meant throughout its long and continuous usage in this Country: *i.e.* those prices charged by established vendors in the relevant market, not new market entrants seeking to inflate prices above those routinely charged in the

18

relevant market. *Se*e Defense Production Act Hoarding of Scarce Materials and Restrictions upon Shipment of Strategic Materials: Hearing Before the Joint Comm. on Defense Production, 81st Cong. 6 (1950) ("For example, if you find an organization has a certain amount of steel on hand and they are not manufacturers, they are not processors, they simply have this steel in a warehouse and they are selling it at twice or three times the published list price, they are hoarding under this section and can be prosecuted.")(Statement of Senator Capehart). Courts and individuals, alike, have routinely determined whether a purchase or sale was "at the prevailing market price." The Defense Production Act's requirement that a defendant cannot accumulate for sale or sell an item specified as scarce by the President at a price exceeding "prevailing market prices" is not "void-for-vagueness." Adherence to the requirements of the Defense Production Act requires neither an exercise of prophesy nor an "exact[ion of] gifts that mankind does not possess." *International Harvester v. Kentucky*, 234 U.S. 246 (1914). Unlike statutes which have been condemned under the vagueness doctrine, the DPA does not leave open "the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921).

## VI.

### Section 4512 Is Not Vague As Applied to Defendant's Alleged Conduct

The generally accepted practice outside the First Amendment context "has been to consider the purported vagueness of a statute in light of the facts of the particular case – i.e., as applied – rather than in the abstract." *United States v. Cook*, 970 F.3d at 873. According to the government, "[a]n examination of how the DPA applies to defendant's conduct makes clear that he has no legitimate as-applied vagueness claim." It is the government's contention that the defendant

"willfully engaged in the precise type of criminal behavior the Defense Production Act was designed to prohibit and that the proof will show that defendant was aware of the demand for N-95 masks as the pandemic worsened, and that he was enthusiastic about the profits he anticipated making by selling masks at prices far in excess of "prevailing market" rates. It is the government's further contention that the evidence will show that the defendant intended to exploit the emergency-driven demand for the masks for the purpose of what the government calls "illegal profiteering." This, says the government, will be evident "from text messages recovered from [defendant's] cell phone which [it represents] will be introduced at trial."[12]

The government's brief concludes by asserting that the defendant "was also given an in-person warning by the FBI to stop selling the masks he accumulated at such high prices," but he ignored this warning and continued to accumulate masks and to sell them at or near the prices "he was explicitly told were too high." *See* Information, ¶ 6 at 5.

## CONCLUSION

In assessing the defendant's "void-for-vagueness" challenge, it must not be forgotten that "'[p]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *United States v. Williams*, 553 U.S. 285, 304 (2008). Nor can we ignore the strong presumptive validity that attaches to an act of Congress, as a consequence of which the

---

[12] For example, the government's brief represents that in a written exchange with a friend on March 27, 2020, the defendant supposedly bragged that: "I made a quarter million dollars last week...profit on masks." In another text exchange on March 30, 2020, defendant's friend allegedly alerted him to a price-gouging criminal case in New York and, according to the government's brief, defendant asked his friend, asking, "who is going to report me?" Defendant then supposedly stated, "I've already been threatened by so many people that they're going to call the FBI," and "I did 1 million extra dollars in three weeks. I'm looking for things where I can make more money . . .That's confidential." According to the government's brief, the evidence will show that defendant bragged about his profits from selling the N-95 masks at above-market prices. The government's brief goes on to quote a purported interchange between the defendant and the other person to whom he was talking.

Supreme Court has "consistently sought an interpretation which supports the constitutionality of legislation." Claims of statutory vagueness are not an exception to this principle. *United States v. National Dairy Products*, 372 U.S. 961 (1963). Finally, the phrase "prevailing market prices" satisfies the standard of reasonable certainty established long ago by the Supreme Court. "A finding of unconstitutionality [in this case] would be a negation of experience and common sense." *United States v. Ragen*, 314 U.S. 513, 524 (1942).

The defendant's Motion to Dismiss the Information [Dkt. #17] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 12/13/21